UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------
TREVIS L. FUNCHES,

                Plaintiff,           CIVIL COMPLAINT
                                    42 U.S.C. §1983

    -against-                        JURY TRIAL DEMANDED

MARK W. ROCKWOOD, et. al.,
                Defendants.    9:20-cv-676 (MAD/CFH)
------------------------------------------

FILED JUN 17 2020 AT ___ O'CLOCK John M. Domurad, Clerk - Syracuse U.S. DISTRICT COURT

      Plaintiff Trevis L. Funhces, pro se, is a citizen of the United States of America and currently incarcerated in the Department of Correction and Community Supervision moves in the above-caption action for Civil Complaint as follows:

## PRELIMINARY STATEMENT

      This is an Civil Action Complaint against defendants Mark W. Rockwood, Justin Miller, C. Burt, J. Aucter, K. Knapp, C. Cowles, T. Gee, M. Drake, Durst, Dirten, Kelly, Gaurin, Donyea, Theriault, Isabella, Richardson, Corey, T.J., Hubber, K. Tucker, Smithers, Ryan Shapiro and JPay Inc. alleged as follows:

## JURISDICTION AND VENUE

    1. This is an Civil Action Complaint made pursuant to 42 USC § 1983 for the matters of controversy. This Court has jurisdiction over this action under 28 U.S.C. Section 1331 and 1343 (3) and (4).

    (a) Venue properly lies in this District pursuant to 28 Section 1391(b)(2), because the events giving rise to this cause of action occurred at Gouverneur and Five-Points Correctional Facilities

## PARTIES

2. Plaintiff Trevis L. Funches, was at all times relevant hereto, a prisoner in the custody of the Department of Correction and Community Supervision (Hereinafter "DOCCS"). At the time of the events relevant hereto, Funches was incarcerated at Gouverneur Correctional Facility including Five-Points Correctional Facility which he currently located at Caller Box 119, Route 96, Romulus, New York 14541.

3. Defendant Mark W. Rockwood is an DOCCS employee and is positioned as Gouverneur Correctional Facility, Superintendent throughtout all times mentioned in the complaint.

4. Defendant Justin Miller is a Correctional Officer in Gouverneur Correctional Facility Special Housing Unit and worked plaintiff's housing Unit at time of one incident mentioned herein.

5. Defendant C. Burt is a Correctional Officer of Gouverneur Correctional Facility, assigned as a Spcial Housing Unit security detail officer normally working 16 hour shift.

6. Defendant J. Aucter is an DOCCS employee and assigned at Gouverneur Correctional Facility in the security capacity as a correctional officer throughtout the events mentioned herein.

7. Defendant K. Knapp is an DOCCS employee and positioned as Deputy Superintendent of all Programs at Gouverneur Corr. Fac., throughout all times mentioned.

8. Defendant C. Cowles is an DOCCS employee and assigned as a Sergeant at all times mentioned.

9. Defenant T. Gee is the Plant Supervisor, who at all times mentioned was assigned as a Tier III Hearing Officer.

10. Defenant M. Drake is an correntional Officer and at all times mentioned was assigned to security detail.

11. Defendant Durst is an DOCCS employee assigned as a Nurse at all times mentioned.

12. Defendant Dirten is an DOCCS employee assigned as the Food Service Administrator at all times mentioned.

13. Defenant Kelly is an DOCCS employee assigned as a Sergeant at all times mentioned.

14. Defendant Gaurin is an DOCCS employee assigned as a Sergeant at all times mentioned.

15. Defendant Donyea is an DOCCS employee assigned at all times mentioned as a Sergeant.

16. Defendant Theriault is an DOCCS employee assigned as Lieutendent at all times mentioned.

17. Defendant Isabella is an DOCCS employee assigned at all times mentioned as the Deputy Superintendent of Security.

18. Defendant Richardson is an DOCCS employee assigned at all times mentioned as correctional officer for Law Library.

19. Defendant T.J. is a DOCCS employee assigned as an Officer at all times mentioned in Special Housing Unit.

3

20. Defendant Hubber is a Food Service Cook at Gouvernuer.

21. Defendant K, Tucker is a Lieutendent at Five-Point C. F.

22. Defendant Smither is a Lieutendent at Five-Point C. F.

23. Defendant Anthony Annucci is Commissioner of DOCCS.

24. Defendant Shapiro is C.E.O. of JPay Inc. e-communication and entertaining provider for NYS DOCCS.

## PREVIOUS LAWSUITS BY PLAINTIFF

25. Plaintiff has filed one other lawsuit dealing with same facts as simularly involved herein under docket number **9:17-CV-1292 (LEK/DJS)** relating to his imprisonment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

26. Plaintiff has filed grievances in all instances or attempted the same by placing grievances in the hands of DOCCS's employees at both facilities mentioned where officials who willfully failed to file and/or process entitled Complaints logged against said officials pursuant to the Prison Litigation Reform Act (PLRA) all readily available administrative remedies pursuant to 42 U.S.C. §1997e(a), as the high Court made clear in **Ross v Blake**, 136 SCt. 1850 (June 6, 2016), a grievance procedure is unavailable when "(1) 'it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation,'" **Ross**, 136 S.Ct. at 1859-60.

4

## STATEMENT OF FACTS

27. Based upon a succession of events officials at Gouverneur Correctional Facility under the dominion and control of Rockwood, K. Knapp who each ochestrated and/or permitted their named subordinates to engage in malicious on-going Retaliatory acts to discourage Funches's rights of expression, deprive his access to Courts, thwart his litigation process, deny due process rights to evidence to form defenses, one hour recreation, change of linen, wash clothes, shower, therażeutic diet meals, loss and/or destruction of personal property and subjecting his to periodic beatens since arriving in October, 2018 where Plaintiff has never signed for a facility Rule Handbook entailing it Policy & Procedures relating to Home Phone use and programming. Despite being program satisfied Funches was thrusted into a Vocational program "Messhall" inspite of requesting a Titled Job "Law Library."

28. After complaining to Administration and abroad, K. Knapp responded after Funches was called back before the Program Committee and assigned "Law Library Paralegal" under threat that Law Library closes early everyday.

29. Plaintiff was subjected to double bunk housing absent a Double Bunk Assessment Sheet being filed and Funches showed where differing facility Superintendent on the matter opinions relating him. See, Attachments.

30. Early May or Late April 2019, Funches was transferred to J. Aucter's housing "E-2" Dormitory and denied his right to purchase "commissary" despite being issued a commissary sheet and filling the same that was turned in to Officer Aucter. The next day

after commissary call for Funches, Aucter denied Funches his
Canteen purchase.

31. Aucter harassed Funches about his employment at Facility
Law Library and said that he knew about Funches's pending Complaint
in Federal Court against fellow officers.

32. On May 20, 2019, Funches cube was maliciously searched
resulting in damage property which was saturated in water and
grease quased by turnt up Big Locker, his bed being flipped over
and small locker being placed on divider over-head. this all
occurred while Funches was out being targeted tested for urin.

33. Defendant Justin Miller searched Funches's Cube. Funches
complained about search of his cube being in violation of State
Directive #4910(f)(1) and (2) by showing Unit Officer Davis his
broken fan and requesting to see Area Sergeant who failed to
appear. Approximately one hour later Rockwood made rounds
accompanied by Lt. Ault in which Funches attempted to speak with
Rockwood but was threaten by animated Rockwood saying "Don't you
ever fucking approach me, get the fuck back to your cube asshole
now! Funches was taken aback but complied by going to and/or
around his disarrayed cube since it was scattered throughout
surrounding cubes. Ault came over to Funches moments later beckon
him out onto Exit door and became very invective causing the
Inmates inside to take notice since he was openingly upset over
Funches attempting to speak with Superintendent Rockwood.

34. Funches was allowed to return and packed all his property,
called his family, who called Albany Central Office et. Office of
Special Investigation. Funches was later called to Sergeant's

Security Office and surrounded by three Sergeants who questioned
him about his family calling to which Funches responed that
because of J. Aucter and his crony C. Cowles (Sergeant) whom
Funches over-heard bragging about nearly breaking an elder inmate's
ribs for Aucter and Funches desired to avoid the same. Veteran Sgt.
Gaurin interjected and asked Funches why his Wife is calling so
much. Funches said because she's my wife and is concern. Gaurin
then asked Funches was he a Shia muslim and Funches said "yes," so
Gaurin said, "that's why you feel she's doing this with you."
At this time another tall Sergeant with glasses asked Funches how
does he know an officer did his cube like that and does he (Funches)
have any problems with any prisoner."

35. An heavy-set Sergeant with bald head interjected saying,
"yeah, maybe it was the Bloods"! Funches explained demonstrative
of hand movement since he had search slip in hand but Gaurin jumped
up and became very belligerent telling Funches stop talking with
his hands before he break them and when you address a Sergeant you
say Sir! Funches tried to speak and was told to shut up and sit
there, then Sergeant asked the others do they have anything further
to say, if not, send him (Funches) back. the chubby Sergeant said
tell your family stop calling and get out of here, Funches left
feeling dejected and rejected went back, called his family to
stress the same.

36. The next shift Funches was called back to the Sergeant's
Office before three other Sergeants and questioned. Funches
requested protective custody because of fears of retaliation from
Aucter, C. Cowles and Gaurin among other officials. Funches was denied

7

Protective Custody but was immediately moved to "C-1 Dormitory"
where he followed the recommended procedures and called his family
and notified them of his move.

37. Gaurin anthored a Misbehavior Report charging Funches
with Phone use violation in excess of 30 minute block from April 4,
2019 through April 22, 2019, absent a showing of same in
description of Incident outlined in report.

38. The next day April 22, 2019, Funches was moved to "F-1-47,"
Funches requested to be furnished with documents of his Tier II
hearing, to wit, voice analysis evidence DOCCS initiated for
Offenders use of Phone which was outright denied with guilty
findings and penalty of twenty (20) days loss of phones and his
Recreation by Theriault. Funches thereafter received another
defective in form Misbehavior Report authored by Gaurin charging
him with the same Home Phone use violations.

39. Prior to disposition of second infraction Lt. Sparwn (Act.
Capt.) interviewed Funches inside Visiting room concerning
Complaints filed against staff including Theriault's affirmance of
Gaurin's phone ticket to which Funches showed that he never
received "notice" according Correction Law § 138, nor was same
outlined in Facility Operation Manual (F.O.M.) #787 or Orientation
Handbook. Thus, pursuant to Funches's Complaints F.O.M. #787 was
revised on May 2, 2019 permitting two thirty (30) minute block
calls per day during 7 to 3 and 3 to 11 shifts. Sparwn advised
Funches that his personnel is not fond of inmates challenging
things and Funches's urin better be clean cause "you've made
yourself a target." Funches said that's not his desire or

8

sintention and would like for Sparwn to speak out against these bogus tickets filed by Gaurin which do not comport with other Misbehavior Reports concerning same subject matter filed by Officers not Sergeant's monitoring phone. Sparwn said he'll speak with Gaurin but Gaurin has much more time (35 yrs) then him even though he's a Superior officer and suggested that Funches speak with Gaurin as well.

40. Gaurin was the Supervisor for Ramadon and Funches approached him with sincerness of apologies for whatever in hope of stopping the onslaught of Misbehavior Reports and stop frisk including harassments by officer during program runs. Two days later Funches was called before Theriault conducting Tier II hearing and his stance was unrelentless regarding Funches's request for Phone documents and his showing of fom #787, Orientation Handbook, State Directive #4423 governing Phone use and desire to call Gaurin admitted second Report of Misbehavior was spiteful.

41. Theriault did not call Gaurin on the "record" but radioed Gaurin who was in next room (Sgt's Office) came out seen Funches and said this must be for your hearing. Funches said yes. Theriault wanted to send him to the S.H.U. but Gaurin said give Funches more time. A few minutes later Funches was called in and given additional twenty (20) days loss of Phone and Recreation and sent back to "F-1 Dormitory."

42. During Ramadon members of Sunni Faith group shared differences with Funches, a Shia, and one attempted to attach Funches at early prayer service two days prior to Funches draft

9

(May 27, 2019). Defendant Corey facility Cook learnt of incident
and on the 28th of May, Funches did not attend services and
attempted to show for the 29th religious meal since he was on
draft status and needed to eat after breaking fast but Corey
mentioned above incident and denied Funches entry to the Messhall
despite regular officer "Gayle" calling and finding approval
from area Sergeant. Funches was denied by Corey and returned to
the housing Unit, where more calls were made and Funches was
allowed a tray.

43. Funches's attacker from May 27, 2019 incident was sent
back early to Dormitory as reflected by log. Funches informed
Officials that his life was in danger which included notifying
Albany Officials and this Honorable Court prior to being drafted
out so Rockwood and K. Knapp was on constructive notice. Plus, at
Rule 30 Deposition before A.G.A. Lynch, Court Reporter and
electrical monitor of how nepotism and cronyism is live and ripe
at Gouverneur Corr. Fac., and the difficulties he faced.

44. Funches even told Law Library Officer Brace of Coxsackie
Corr. Fac., while there to no avail. Thus, upon return to
Gouvernuer Corr. Fac., on June 20, 2019, defendants' undertaking
complete control, care and custody of Funches an Offender who was
completely dependant and totally reliant upon their professionalism
and unbias enrollment into housing and his Law Library employment
since he was not away from facility according policy and procedure
more than thirty (30) days. The protective duties of defendants'
were breached by failure to reasonably foresee despite knowing

10

risk of harm to Funches placing him inside "E-2-47B", an housing
location according to C. Cowles's knowledge of prior risk of harm.

45. Funches was indeed stabbed, cut and beaten inside said
housing. The very next day, June 21, 2019, at approximately 5:35
p.m., Funches was targeted by J. Aucter, Clintsman and Drake at
the behest of C. Cowles where Funches was searched cuffed from
the back and while escorted suddenly punched in stomach so hard,
he threw-up and was tripped forcibly to the ground where Clintsman
fell atop him causing the split of Funches's chin and eye injury
requiring sutures at outside Hospital.

46. Upon return Funches was placed on One on One Drug Watch
til June 25, 2019. Funches was held in S-200 Box under two
cameras supervision. Cameras numbers CS-46 and CS-49 where Funches
displayed his injuries since security instructed medical staff **not**
to record stab, cut wounds. Funches was beaten upon entry of small
Box by Justin Miller and "T.J." (regular Officer Hat & Bald Spot).

47. Funches was served with three joint Tier III Misbehavior
Reports on the 25th of June, 2019 by Officer Theriault where he
learnt of alleged synthetic cannabinoid, fighting and several
other charges. That evening Funches was brought before an
animated C. Burt for his property but was simply given what Burt
wanted though two folders of Funches's legal work was laid out.
Burt was holding a pair of Funches's glasses in his hand and said
"so you're the fucker that likes writing Officers up and trying to
make them loose their jobs?" Funches said no and that he was there
for being assaulted. Burt jumped in Funches's face while becoming
loud with spit flying into Funches's face, while becoming red in

11

the face and pushed Funches back into escort officer who shoved Funches on to table and Burt grabbed Funches's neck and said, "you're not getting none of this legal work."

48. Burt then asked the veteran Officer could Funches have his glasses since they have so much metal in them? the escort said "yes" and picked them up off the table where Burt put them and placed the glasses in Funches's pocket and Funches was turn to have his property placed in his out stretched arms, then escorted to A-3 cell.

49. Dinner came around and though "Special Diet" is a monitored meal Funches was denied his therapeutic diet as a diabetic. The very next morning during breakfast feeding Burt opened and closed Funches's feed-up slot and claimed Funches threw a feed up tray stricking Burt in his lift hip to deny Funches his break-fast while alleging that he was conducting "SHU" feed-up by him self against policy and procedures. Funches spoke with K, Knapp about the denial of his legal work and therapeutic diet meal denial. A few minutes later officer "T.J." and Miller came to Funches's cell and told him to stand up turn around and put his hands through slot so he can get his legal work from property. Funches was beaten and stomped to submission by both Officials then carried back to A-3 cell and thrown in uncuffed.

50. On June 26, 2019 at 8:40 p.m., Funches was served a Tier III for the alleged Assault on Staff and several other charges to which he requested Employee Assistance, all documentary evidence, photos, medical reports and TO/FROM Reports, J. Aucter's Drug Analysis Certification for NARK II Test and said Employees as

12

witnesses including Videotape CS-46 and CS-49.

51. The hearing was adjourned to obtain said documentary evidence requested because Isabella though remembering seeing the same did not have. On July 3, 2019, Tier III hearing recommenced where Isabella merely read some documents into "record" and said the Unusual Incident Report though he thought he had it, it must **not** been completed. He believe J. Aucter had Drug Certification. Isabella never mentioned Videotapes or stab, cut wounds, nor was any requested evidence disclosed to Funches or his unrefutable allegation of retaliation by J. Aucter or Drake acting at the behest of C. Cowles.

52. Plaintiff received 77 days not including 13 days of pre-confinement. Drake violent conduct charge was <u>DISMISSED</u>, yet underlying charge of Disturbance was up-held where such was particularly suspect and objected to as a whole.

53. After inquiry of Assault on Staff Misbehavior Report approximately an hour later Funches was called before hearing Officer T. Gee, Plant Superintendent where Funches strongly objected to initial commencement and recommencement of hearing pursuant to 7 NYCRR § 251-5 Timeliness in that Assault on Staff ticket, Funches was reasonably confined notwithstanding the fact that he was serving pre-confinement on unrelated Misbehavior Report and offered Employee Assistance which he picked besides on July 3, 2019, Funches was released from pre-confinement an hour before the start of hearing being the 9th day since the writing of June 25th, 2019 Misbehavior Report at 6:05 p.m.

13

54. Secondly, Funches contended via objection that the recommencement of hearing on July 11, 2019 was untimely where July 8, 2019, at 6:05 p.m. marked the 14th day and no where on the "record" has Gee annouced on the record that he would be seeking an extension or even granted one prior to statutory deadline of 14 **days** or giving Funches "Notice" according to Correction Law § 138,

55. Funches correctly objected to and pointed out that there was absolutely no **Showing of Assault on Staff.** No injury was reported, no medical reprt entered the record, no evidence of food spillage on floor or wall and no photos. All other alleged underlying charges is demonstrative of on-going retaliation Funches previously and instantly reported because of his First Amendment Expression.

56. As noted by misbehavior report feeding continued without having to call Messhall for another tray despite the policy at Gouverneur Corr. Fac., of two officers conducting feeding as admitted by Burt. One officer is to do the cold food items, while the other hand-out Hot Trays. Burt simply retaliated against Funches because of his First Amendment Expression.

57. For the last fifteen years Funches, a certified Diabetic Offender, has therapeutically been prescribed control "B" Special Diet with a snack because of his deteriorating diabetes which DOCCS's regulations require him fwhen physically able to enter a Messhall display his identification to a Cook and sign-up for the prescribed "Special Diet."

14

58. General population inmates at Gouvernuer Corr. Fac., policy and procedure for Special Diets is released from housing Units first before main feedings, Pursuant to these requirements and procedures the Food Service Adminstrator and main Cooks that drive Truck to S.H.U., one Corey with gold beard since June 21, 2019 completely denied and/or failed to oversee Funches's Special Diet feeding and without any dispositional order allowed Funches's food to come in styrofoam cold and many times absent the main entree.

59. Since the conclusion of Funches's hearing cassette tapes 306-19 and 311-19 along with a timely manner from disciplinary office, FOIL Office and D.S.P. Knapp, to no avail. Infact, Knapp during rounds with J. Miller told Funches that we do not give tapes and cassette players out.

60. On July 24, 2019, Funches requested Knapp in the alternative to have his hearing tapes transcribed for his review while making rounds and she said, "No." Defendant "T.J." denied Funches his Special Diet main entree.

61. Based upon the involving incident with C. Burt, one kelly filed an report "Memo" relied upon by T. Gee and resulted in Funches being served his "Special Diet" meals in styrofoam via portable metal slot feeder.

62. On July 29, 2019, after asking Supt. Rockwood whether he ordered portable tray feeder to which Rockwood said "No," and that such would have had to came from security, Isabella. Funches explained that a non-policy maker "Kelly" instituted this and the disposition rendered before T. Gee never ordered the same. Rockwood said he'll check into it and sometime later an officer removed it per security.

63. Upon review of personal property after being transferred to Upstate Corr. Fac., Funches "noticed" numerous missing property and filed Institutional claim that resulted in partial grant absent a full and fair investigation of prevailing facts. The concerned defendants' at Gouvernuer Corr. Fac. permitted a total of $ 125.00 dollars to be paid out to Funches. Thus, the admission does not meet the sum total or reasonable reduced payment for deliberate personal property loss. See, Claim attachments.

64. Funches contends that because of proper procedures were not followed relating his physical presence during the itemization of his property at Gouvernuer violated 7 NYCRR § 1700.8 since the I-64 Form drastically differ from May 29, 2019, I-64 Form prior to being drafted out for deposition constituting a breach of duty and care to personal property.

65. On January 14, 2020, Tucker conducted a Tier II disciplinary hearing stemming from an alleged incident recorded by camera and microphone to which Funches requested to be provided with as a defense to the allegations leveled by reporting officer. Inspite of Tucker's review he found that Funches communicated with and refused his direct order and said funcking cop, when report stated, "stupid mother fucking cop is talking to me and I am about to beat his ass." Certainly the evidence does not reflect the same.

66. Surely, the video and audio footage differ. Still Tucker went on to write in his disposition that Funches used insolence to official.

67. Funches contends that DOCCS's partnership or contract with JPay Inc. providing service to prison population via Kiosk

program which was enacted to help struggling families contact and maintain the same through Tablet use. However, the Kiosk system and inoperable Tablet issued was so exorbitant that Funches ability to communicate with family and friends was not allowed despite having $50.00 dollars transferred from his Inmate Account to JPay Media Account on January 30, 2020. See, Disbursement encl.

68. Officials at Five-Point Corr. Fac., Smithers attempt to hamper Funches's communication and grievance complaint process relating COVID-19 deadly pandemic virus within DOCCS's system absent Funches being provided with proper protective equipment despite his underlying conditions as a diabetic with high blood pressure. Smithers subordinate officer Shields upon Funches's arrival at grievance commented that, "didn't Smithers talk to you and that the instant Grievance issue is not grievable so leave!"

69. This happened early May, 2020. On May 13, 2020 Smithers concerns were reduced to writing via Shields grievance response. Smithers called Funches a "Black niggar writer thinking he'll make change to how Five-Point is ran. Funches request for the return of his $50.00 dollars to Inmate Account since the service needed was not provided after Funches's filing pursuant to directive 4040 legislated by DOCCS after attempting to resolve the his issues under section 701.9 and in complaince with 42 U.S.C. § 1997e(a), including reaching out to JPay Inc. via trouble letter to no avail. In fact DOCCS cited to Directive 4425 section IV, M, 2 which states "any money in the Kiosk media account cannt be transferred to another account or refunded at any time."

17

70. Funches contention against Smithers is clear and specific in that since Orientation, petitioner was targeted by Smithers intemperate behavior and engagement in outburst profanity when he called Funches a niggar writer attempting to change policy and procedures. Smithers threaten Funches while in the Law Library in stating that he would put a four hundred pound inmate inside a cell with Funches to rape him because he could do that!

71. As a result of Funches release from S.H.U. non-violence offense Law Library Supervising Officer Babcock informed Funches that space is available in third and Fourth modular and to write program committee for re-assignment. A few days after writing the program committee Lt. Smithers appraoched Funches inside the Law Library and said, "you will not be working inside this facility Law Library again," and "you still have not received a Tablet," while walking away laughing.

72. Funches as a Idle offender on May 21, 2020, received notification from Program Committee stating, "Your request for a program change is denied for the following reasons: Security reasons. This decision is inapposite to established procedures where the Deputy Superintendent for Security or Deputy Supt. of Programs issue such decision. This is not the case and is geared to retaliate against Mr. Funches, that is, preventing Funches from being assigned to the Law Library because he legitimate challenged Lt. Smithers enforcement of an illegal prohibition that disallowed Funches from using the law library typewriter as a means to prepare legal materials that satisfied his administartive exhaustion require-ments mandated by 42 USC §§ 1997e (a).

18

73. On May 29, 2020, while Funches was in the Law Library he was approached by Lt. Smithers who picked up his Legal work read it and told Funches to pack his shit and get out for typing up this Civil Complaint, then told officer Babcock to stop Funches from coming to the Law Library in an attempt to curtail his First Amendment Clause of expression.

74. Funches contention against Shapiro and JPay Inc. seeks declaratory relief under 28 U.S.C. § 2201; Violation of his Fourth and Fourteenth Amendment right to be free from unreasonable deprivation of funds under 42 U.S.C. § 1983 and breach of the duty of good faith and fair dealing since DOCCS's instituted statute under Directive 4425 section IV, M, 2 should be ruled unconstitutional under the Fourteenth Amendment and where his First Amendment right is resounding in being free from retaliation for filing grievances under the prison's established procedure. cf. Booker v S.C. Dep't Corr., 855 F.3d 533, 541 (4th Cir. 2017).

75. Defendants' failure to provide Funches with a recourse to retrieve his funds after accepting the same absent service when simularly situated Offenders enjoy the amenities offends Funches's due process rights. Despite knowing the defective issue after numerous complaints, on April 9, 2020, JPay Inc. sent Funches a letter notifying him that effective immediately, a new password is assigned. Using the new password Funches was still unable to access the Kiosk system or use of Tablet and sent another trouble letter to JPay to no avail. An JP5 mini Tablet has not been received despite alleged order since December, 2019.

76. Funches and family has complied with the established JPay's media services through registration and as a result of

19

dispersing funds to JPay media account, Funches contends that JPay
and Smither's fraudulently misrepresentates both DOCCS's
regulations to grieve policy relating JPay, JPay allowance of
Funches's funds without providing any service to gain enrichment.

77. Defendants Ryan Shapiro of JPay Inc. and Smithers of DOCCS
interpretation of directive 4425 to deprive a fourteenth amendment
challenge to the retrieval of funds since service is not available
and officials relating the matter continue to direct Funches to
irrelevancies at Five-Point Correctional Facility.

78. Funches contends that together with the Home-Phone
program to which his access is curtailed his first Amendment right
of expression is abridged.

THWARTING LITIGATION

79. Funches initially contends with good cause that the
Gouverneur Corr. Fac., officials Rockwood, K. Knapp, Gaurin and
Richardson systematically courtailed his access to the Courts and
administrative exhaustive process by illegally shutting facility
Law Library down early during week day modulars at 4:30 or latest
4:45 and at 8 o'clock p.m., during weekends from 8 to 10 a.m. and
12:30 to 2:30 in violation of 7 NYCRR § 4483 of Directive which
states in pertinent part that Law Library is to be opened for at
least seven £7· hours per day.

80. Thus, contrary to our Supreme Court decision opined in
Bounds v Smith, 425 U.S. 968; Lewis v Casey, 518 U.S. 343, 351-355
in essence misappropriating State allocted funds for requiring
programs coerced via threats of violence and firing Funhces as a
Clerk for reducing his concerns to writing which off-set Funches's
ability to effectively address the Courts and be of meaningful

assistance to prison population since being assigned a paralegal
by Program Committee which duty entailed motion practice which
officials inherently frawned upon. Funches was short circuited in
addressing non-frivolous state officials including a Rule 60(b)
application based upon newly discovered evidence of .38 weapon
revolver Officer Cahill testified to initially arresting Funches
for, yet failed to file a felony Complaint and Legal Bureau
Counsel Laura B. Holt certified after speaking with NYDA's Office
and Police involved.

81. Funches claimed actual innocence for said crime he's
serving a life sentence for, a FOIL appeal to First Judicial
Department on April 30, 2020 has been unanimously modified on the
law relating viable contentions. Funches inquiry about Law Library
early closing was met by Richardson saying, "This the way we run
things here." Supervising Sgt. Gaurin told Funches "we can arrange
for you to be in the Box if you keep worrying about how we run our
facility now pick up your legal shit and get out of here" when
Funches was heading to work and was searched by two officers.

82. Knapp approached Funches with a smile and asked Funches
whether Richardson spoke with him about a raise Funches sought and
Knapp said no need to write her about Law Library issues officers
can handle. Rockwood failed to intervene and correct such early
closing of Law Library despite Funches writings.

83. Funches claimed pursuant to every well founded report or
Inmate infraction, staff malfeasance, harassment and any other
misconduct is to be brought to Rockwood's attention making him
aware yet failing to act along with K. Knapp to prevent reasonable

21

and foreseeable harm when Funches returned from Deposition within thirty (30) days where he was moved arbitrary and caprious to a housing location where he was stabbed, cut and beaten without any official intervention or medical treatment at the behest of Rockwood, K. Knapp, Donyea on June 20, 2019, inside E-2 Dormitory during the 3 to 11 shift. Funches was also erroneously excluded from returning to his assigned Law Library program without cause.

## EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM

84. On June 21, 2019, Funches was awaken from his nap by three (3) officers restraining him to a stand up position and applied mechanical restraints after searching his person without any contraband found and roughly escorting him outside his cube where he was viciously punched in his stomach by J. Aucter ecausing him to throw up while Drake took Funches's legs out by falling atop his his back causing Funches's chin to split open and then carried before Nurse Durst and Sgt. Gaurin where he was stripped bandaged, photographed and immediately taken to outside Hospital with instructive treatment of Eye and Chin to where he received sutures.

85. Officers failed to intervene to stop said abuse. Funches after returing from outside Hospital was placed in facility 5200 Box Second floor under cameras CS-46 and CS-49 Supervision for One on One Drug Watch and Funches displayed his stab and cut wounds to cameras to no avail.

86. On June 25, 2019, Funches was moved to facility main SHU and was met by Miller and T.J. who ordered him to face the corner and said, "any time we speak to you, you are to say "yes Sir,' now do you understand? Funches said yes," T.J. threw a flurry of punches to Funches's back causing him to buckle over into corner

22

calling out to escorting Sergeant. Sergeant said "shut up you ass-
hole." Miller uncuffed Funches and ordered that he discard paper
slippers and put on S.H.U. old sneakers then recuffed and asked
whether Funches knew who he was. Funches said "No." Miller punched
Funches so hard causing Funches's dentures to fly out of his mouth
and stepped closer saying "I'm Miller remember me now, you wrote a
grievance and filed a claim over a cube search." See, attachments.

87. On June 26, 2019, after complaining to Knapp about not
receiving entitled legal work and Special Diet from Burt. Miller
and T.J. came to Funches cell cuffed him to get his legal work
allegedly but upon entry to property room petitioner was viciously
beaten and stomp to submission for complaining about legal work
and not being feed.

MALICOUS RETALIATION & EIGHTH AMENDMENT CONDITION CLAIM

88. Funches claim on-going malicious retaliatory action were
committed, suborn and openly permitted by Knapp, Rockwood and
Gaurin via submissions of fabricated official documents in stark
violaiton of DOCCS's Employee Rule Manual Introduction outside the
color of law in essence subjecting Funches to cruel and unusual
punishment while insulating themselves. Defendants' Gaurin, Cowles,
J. Aucter, Drake, Kelly and C. Burt's dubious reports were
contemplated to harm Funches. The retaliation was merely to hurt
Funches who continues to be deprive of his legal work, change of
linen, one hour recreation, cell clean-up, therapeutic "Special
Diet meals" as a diabetic patient and subjected to periodic
beatings. Plus whatever food served is through a Slot Server and
awfully cold.

23

89. Pursuant to Kelly's Memo absent a lawful Tier Hearing determination or Superintendent order which is dissimular in manner. Funches believes that his claim is cognizant under the 8th Amendment conditions in lieu of our High Court enunciation in <u>Sandin v Conner</u>, 515 U.S. 472, <u>484</u>. In that defendants' restrained Funches's Freedom without just cause and in a manner outside his sentence that imposed atypical and significant hardship on him in relation to ordinary incidents of prison life. In this case, due process was <u>**not**</u> afforded prior to the defendant's doings.

## FOURTEENTH AMENDMENT PROCEDURE DUE PROCESS CLAIMS

90. On May 20, 2019, Funches cube was maliciously searched by J. Miller resulting in damage property saturated in water and grease quashed by turnt up Big Locker, Bed flipped over and small locker on divider over-head which happened while Funches was taken for urin. Funches complained not only because search did **not** conform with state-wide Directive #4910(f)(1) and **(2)**.

91. Funches requested to see Sergeant, his family called facility several times and later he was called before Gaurin and two Sergeants. The next day Funches received one of two Misbehavior Reports charging Phone violation, Pin Exchange and Exceeding thirty (30) minute Block calls. Such reports were served on Funches by Theriault's brother that conducted Funches's two hearings in question.

92. Funches was denied requested materials and he reiterated his request to Theriault at Tier hearing but was denied the same for any defense quite rudely. None of Funches's request for evidence available to hearing officer including Gaurin whom Funches requested would have been unduly hazardous to institutional safety or

24

correctional goals. Ponte v Real, 471 U.S. 491, quoting Wolff v
McDonnell, 418 U.S. 539, 566.

93. In addition, Funches claims that Isabella and T. Gee
violated his constitutional due process rights under Fourteenth
Amendment to documentary evidence to which Cowles, Drake, Aucter,
Burt and Kelly had available to them and/or participated in the
participation thereof prior to depriving Funches of his limited
liberty and property interest without due process of law.

94. Funches correctly asserts that when he was accosted by
Drake, Clintsman and Aucter at the behest of Cowles that was with-
out just cause making all the underlying charges authored by Drake,
Aucter and Burt's violation of due process rights of protection in
remaining free from malicious disciplinary accusations. Thus,
because Funches requested copies of all Medical Reports, TO/FROM
Reports, Unusual Incident Reports, drug Certification of Aucter,
Photo of alleged Drug and any injuries sustained and witnesses from
assistance and before Isabella who vowed to check because of the
items requested he did not have. Nor, have Isabella disclosed any
documentary evidence Funches needed. Making the error never cured
when Funches liberty is at stake. Wolff v McDonnell, 418 US at 557-58.

95. Theretofore, the same principle apply to T. Gee who
conducted Burt's Tier III Misbehavior Report where Funches again
requested assistance for allowable documents available to T. Gee
in order to prepare adequate defense but was never given even after
re-asserting same at timely hearing in two distinct and separate
aspects where based upon nature of charge Assault on Staff was
unfounded and the denial of evidence sought violates the strictures

25

of due process of law. Funches requested photos of tray thrown, injuries sustained or evidence that Burt had to change clothes but was denied the same.

96. Infact Burt claimed to have cleaned up any spillage and continued feeding by himself which was not otherwise disrupted. Funches objected to the initial commencement of hearing start date of July 3, 2019, being the 9th days but T. Gee claimed Funches was not confined as a result of Assault on Staff and several other charges when Funches showed that he was released from S.H.U. pre-hearing confinement an hour prior to instant hearing start which disposition T. Gee just received indicates.

97. Funches then objected to recommencement of hearing on July 11, 2019, as untimely pursuant to the 14th day Rule of 7 NYCRR Chap V Section 251-5 and never received **notice** of a requested extension prior to the 14th day Rule. T. Gee merely reconvened on the 17th day in violation of law.

<u>DEPRIVATION OF DUE PROCESS RIGHTS</u>

98. Plaintiff correctly contends that after his hearings he respectively sought his hearing tapes before each defendant Theriault, Isabella and T. Gee by writing Disciplinary Office, Dep. Supt. of Programs K. Knapp including Rockwood to no avail. On July 18, 2019, while accompanied by Miller, Knapp stopped at Funches cell pursuant to his inquiry of hearing tapes and said, "no, we do **not** issue hearing tapes and cassette players to help inmates with appeals."

99. Miller laughed as they walked away. Funches banged on his door out of hurt and rejection. Miller did **not** feed Funches his therapeutic Diet meal. On July 24, 2019, Funches asked Knapp to have his hearing tapes transcribed and she said no! Funches was denied Special Diet by regular S.H.U. Officer "T.J."

## RETALIATION AND EIGHTH AMENDMENT PUNISHMENT

100. On July 17, 2019, Miller came in early to participate in S.H.U. breakfast feeding with 11 to 7 regular officer and failed to feed Funches, Funches complained and 11 to 7 Officer told console officer to open A-3 cell where he threw two milks hitting Funches and splashing milk on bed and Funches's body as he and Miller entered plaintiff's cell, where regular Officer from 11 to 7 punched Funches in the jaw folding him up and left cell all in response to Funches wanting his entitled Diet meal.

101. Upon shift changing Officer "T.J." rushed to Funches cell laughing saying, "you can not fight, you lossed another fight and you can not write. We are reading all your mail! On July 21, 2019, during breakfast no Hot or cold cereal was served to Funches in styroform tray as Special Diet, Funches brought the same to 11 to 7 Officer's attention who said it's not his fought that's what the Messhall sent. On July 22, 2019, the same thing occurred as customary with Funches not receiving his main entree if a feeding is given.

## RETAIIATORY DEPRIVATION OF DIET EIGHTH AMENDMENT

102. Funches alleges here that his constitutional rights violation occurred on June 21, 2019, when Food Service Admin. Dirten failed to act to prevent, promulgate or implement a policy

27

to assure "Special Diets" feedings in facility SHU. Thus, the
existing policy coes <u>not</u> conform with special diets at least not in
manner of general population feedings or otherwise statewide
accountability. Gouverneur's SHU policy is so deficient that the
policy itself is a repudiation of constitutional rights and is the
moving force of the constitutional violation of Dirten.

103. With regards to Cook Corey that drove Messhall Truck over
to SHU, and unloaded same, rung bell and left which also include
Cook Hubber's doing. Funches believes these Cooks are in dereliction
of duties in failing to account for Special Diets feeding in SHU,
and completely failing to feed plaintiff.

## DELIBERATE INDIFFERENCE CLAIM AGAINST NURSE DURST

104. Funches claims with equal force that because of his stab
and cut wounds he suffered when broght before Durst on June 21,
2019, she neglected her duty of care, at the behest of Gauring and
merely processed Funches for outside Hospital trip for Eye and
Chin injuries. See, Medical files.

105. On June 25, 2019, Durst knowing Funches complaints of
starvation failed to document the same or reappear with Diabetic
medication for Funches since the consumption was to be taken with
food. Instead Funches medication was given to 11 to 7 Officer and
tall young accompanying officer who attempted to issue medication
without feeding and Funches went without eating or his diabetic
medications.

106. On or about July 15, 2019, and July 17, 2019 Durst worked
and issued Funches medication and Eyedrops and said she will not be
making rounds in the morning so she's giving Funches's his

medication absent Eyedrops which is against facility Doctor's Moon order of One on One administration of said medication. As a result, Durst treated Funches differently than other simularly situated Offenders based on Official's hostility and animus towards Funches First Amendment expression.

## EIGHTH AMENDMENT CLAIM AGAINST SGT. KELLY

107. Funches claims that the "Memo" submitted by Kelly was for punitive reason and encroached upon his interest of being free from unusal punishment where he was served cold food in styroform trays via a metal tray slot server absent any authorization from facility Superintendent Rockwood or D.S.S. Isabella. Thus, the regime Funches was subjected to by the overreaching of Kelly to the Messhall for styroform cold trays and metal tray server absent main entree was violative.

108. Surely, Funches should have been afforded the procedural protections set forth in **Wolff**. However, this is **not** the case owing to Kelly's actions. Nevertheless¹ one constitutional protection retained by Funches was the right to an adequate diet. cf. **Campbell v Cauthron**, 623 F.2d 503, 505 (8th Cir. 1980).

## ISSUE SPECIFIC GRIEVANCE ACCESS DENIED UNAVAILABLE

109. Plaintiff claims that the primary purpose of a grievance is to alert prison officials to aproblem, to which, he has done just that prior to his Deposition and certainly thereafter orally which was reduced to writings but essentially the Grievance process was unavailable practically speaking incapable of use where its operation was an simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved Funches.

29

The same applies with Five-Points Corr. Fac., officials who consistently hampered Funches ability to grieve, Cf. **Booth**, 523 US at 736, 738, 121 S.Ct. 1819.

110. Gouverneur Corr. Fac., undertook full care, custody and control of Funches after his return from deposition on June 20, 2019, and thereafter placing him in facility S.H.U. not equipped with cameras or mail cart or bags for Offenders to deposit their mailed grievances or selection of mail if any is picked up from Funches's gate and **not** discarded or used by officials to deny Funches feeding.

111. Funches also claims that because he is the subject of discrimination by Gouverneur Officials based upon First Amendment Expression Clause and moves to evoke the Congressional Textual exceptions mandatory exhaustion of Prisoner Litigation Reform Act under Section 1997e(a). See, Grievances.

112. Plaintiff believes that Gouverneur Officials including Five-Points defendants' herein equate Funches's writing stance with danger to emergency proportions, likewise objectively reasonable for such officials to thwart Funches alerted litigation at all cost.

113. Funches contends unequivocally that since he was generally required to follow the procedures adopted by Gouvernuer Corr. Fac., the specific requirement should be interested in light of the grievance rules of the particular prison system at Gouverneur SHU mail-box cart any secured depository for mail. Instead Funches has been force to have his grievances put in the hands of Miller, 11 to 7 Officer for SHU and Burt who normally does 16 hour shifts. Said

grievances involved them and other officials working to thwart Funches's First Amendment Expression.

114. Within this framework, Funches believes the record establishes beyond any doubt that there is objectively reasonable basis for him not to have access the grievance process. Miller and "T.J." would come in after Funhces placed mail, to wit, grievances on his gate for cronies to pick up and say we're not finish with your ass. These threats of harm were bereft with inadequate care and supervision in the Spcial Housing Unit at Gouverneur C. F.

115. Despite defendants' saying so Funches has not received any acknowledgement from Grievance of his filings with thee exception of one filed sometime prior to deposition. See, attach. In conclusion because of the on-going retaliatory actions here persuasive authority holds that, in such circumstances, Funches need not to continue filing grievances about same issue. cf. Sulton v Wright, 265 F.Supp.2d 292, 295-99 (SDNY 2003).

116. Funches contends that the terms of service as of December 1, 2015, provides: 1) for Arbitration pursuant to the Rules of AAA: 2) that the matter be filed in Miami, Florida; and 3) the Agreement be governed by New York law. Thus, Funches seeks this Honorable Court diversity powers in determining the merits of his claims against Ryan Shapiro and J-Pay Inc. because Funches's grievances with the lack of service from JPay has jurisdiction here, especially where Funches has signed no documentation agreeing to otherwise. Funches has not entered a written arbitration agreement that is enforceable 'under ordinary state-law' contract

principles and the claims before the Court fall within the scope
review since DOCCS officials, take a participatory role in failing
to provide a vehicle for due process challenge regarding the
retrival of funds when service is not provided.

117. Defendant Smithers overseeing supervising official at
facility grievance department despite numerous complaints to other
officials at facility refused to refund Funches his $50.00 dollars
and process his entitled grievance on the matter. See, attachments.

118. Given the circumstances of these claims this case presents
and the nature of Defendants' acts, actions or inaction Funches
believes that his constitutional rights has been violated and
because Funches was not obligated to provide personal notice to a
particular official that he may be sued, the grievance is not a
summon or Complaint that initiates adversarial litigation. Brown v
Sikes, 212 F.3d 1205, 1207-10 (rejecting a rule that a prisoner must
always name defendants in his grievance).

WHEREFORE, plaintiff prays that the Court grant relief required
from constitutional violations.

1. An order awarding compensatory damages in the amount of $
150,000 thousand dollars from Mark Rockwood, K. Knapp, Isabella,
Dirten, T. Gee, Gaurin, C. Cowles, Kelly, Theriault, Donyea, "T.J.",
Drake, Richardson, Justin Miller, C. Burt, J. Aucter named in
entitled complaint;

2. An order awarding compensatory damages in the amount of
$ 15,000 thousand dollars from from Ryan Shapiro, JPay Inc. C.E.O.
and $ 30,000 thousand each from Lieutenants K. Tucker and Smithers
named in entitled complaint;

3. An order awarding punitive damages in the amount of $ 195,000 thousand dollars to plaintiff named in complaint;

4. An order directing such other and further relief as the Court may deem just and proper, together with fees, interest, cost and disbursements associated with this action as it may appear plaintiff is entitled.


Dated: June 11, 2020
       Romulus, NY




                                    Respectfully submitted,

                                    *Trevis L. Funches*
                                    Trevis L. Funches Sr.
                                    Five-Points Corr. Fac.
                                    Caller Box 119, Rte. 96
                                    Romulus, NY 14541

c/c: Letitia James
     Attorney General
     THE CAPITOL
     Albany, NY 12224

     filed